UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
Joseph Casucci, individually and on behalf of
all others similarly situated,

                          Plaintiff,                                     **COMPLAINT**

                                                                               Civil Action No.: 25-7284

-against-

TAZO TEA COMPANY and LIPTON TEAS AND
INFUSIONS B.V.

                            Defendants.
--------------------------------------------------------------------------------x

**JURY TRIAL DEMANDED**

      Plaintiff Joseph Cassuci, individually and on behalf of all others similarly situated, by the undersigned attorneys, as and for his Complaint against defendants Tazo Tea Company ("Tazo") and LIPTON Teas and Infusions B.V. ("Lipton," collectively, the "Defendants"), alleges the following based upon personal knowledge as to himself and his own actions, and as to all other matters, respectfully alleges, upon information and belief, as follows (Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

**NATURE OF THE ACTION**

      1.     This action seeks redress for a deceptive and otherwise improper business practice that Defendants engage in with respect to the packaging of Tazo's bottled tea Products. Tazo bottled tea is a beverage Product sold in a variety of flavors.

      2.     One of Tazo's bottled tea Products is an "Organic Iced Green Tea" which is then

described as "green tea infused with lemongrass, spearmint & a **touch of sweetness**" (See Exhibit A (emphasis added).

3. This Product description, however, is in fact a bold faced lie.

4. According to the nutrition facts for the beverage, a single 13.8 fl. oz bottle contains **30 grams of sugar**. Per the American Heart Association, the maximum amount of added sugars recommended is as follows: for men, 37.5 grams and for women, 25 grams. For purposes of perspective, a 12 fl. oz can of Coca-Cola has typically 39 grams of sugar.

5. Plaintiff and Class members viewed Defendants' misleading Product packaging, reasonably relied in substantial part on the representations, and were thereby deceived in deciding to purchase the Products for a premium price.

6. Plaintiff brings this proposed consumer class action on behalf of himself and all other persons nationwide, who, from the applicable limitations period up to and including the present (the "Class Period"), purchased for consumption and not resale Tazo's bottled tea Products.

7. During the Class Period, Defendants manufactured, marketed, and sold the Products throughout the United States. Defendants purposefully sold the Products with an intent to facilitate unfair competition and create consumer confusion, through their false advertising and labelling.

8. Defendants' actions constitute violations of New York Gen. Bus. Law § 349 (New York's statute on deceptive acts or practices) and Gen. Bus. Law § 350 (New York's statute on unlawful false advertising), as well as those similar deceptive and unfair practices and/or consumer protection laws in other states.

9. Defendants violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, and

unconscionable trade and business practices and false advertising. These statutes are:

    a. Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*

    b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak_ Code § 45.50.471, *et seq.;*

    c. Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*

    d. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*

    e. California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*

    f. Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*

    g. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*

    h. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*

    i. District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*

    j. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*

    k. Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*

    l. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*

    m. Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

    n. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 1LCS § 505/1, *et seq.;*

    o. Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*

    p. Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*

    q. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

    r. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

 s. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § §51:1401, *et seq.;*

 t. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

 u. Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*

 v. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

 w. Michigan Consumer Protection Act, § § 445.901, *et seq.;*

 x. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

 y. Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

 z. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

 aa. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

 bb. Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

 cc. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

 dd. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.;*

 ee. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et seq.;*

 ff. New Mexico Unfair Practices Act, N.M. Stat. Ann. §§57 12 1, *et seq.;*

 gg. New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*

 hh. North Dakota Consumer Fraud Act, N.D. Cent. Code §§51 15 01, *et seq.;*

 ii. North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

 jj. Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

 kk. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

 ll. Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

    *mm.*      Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

    *nn.* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.1. Gen. Laws § 6-13.1-1, *et seq.;*

    *oo.* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

    *pp.* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

    *qq.* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

    *rr.* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*

    *ss.* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

    *tt.* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

    *uu.* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1 -196, *et seq.;*

    *vv.* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

    *ww.*      West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

    *xx.* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*

    *yy.* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

10. Defendants' misbranding is intentional. Defendants have been unjustly enriched as a result of their conduct. Through these unfair and deceptive practices, Defendants have collected millions of dollars from the sale of their Products that they would not have otherwise earned.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

12. The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C § 1331 because it arises under the laws of the United States.

13. The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

14. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000.00 and is between citizens of different states.

15. The Court has personal jurisdiction over Defendants because their Products are advertised, marketed, distributed, and sold throughout New York State; Defendants engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendants are authorized to do business in New York State; and Defendants have sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants are engaged in substantial and not isolated activity within New York State.

16. Venue is proper in this District pursuant to 28 U.S.C § 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendants are subject to personal jurisdiction in this District. Plaintiff purchased and consumed Defendants' Products in New York County. Moreover, Defendants distributed, advertised, and sold the Products, which are the subject of the present Complaint, in this District.

**PARTIES**

17. Plaintiff is and at all times relevant hereto has been a citizen of the State of New York and resides in New York County. Plaintiff has purchased the Products for personal

consumption in New York County.

18. Defendant Tazo is a tea and herbal tea distributor based in Kent, Washington. Defendant Tazo manufactured, advertised, marketed, and sold Products and other beverages to tens of thousands of consumers nationwide, including in New York.

19. Defendant LIPTON Teas and Infusions B.V. is a Dutch multinational company headquartered in Amsterdam and the owner of the TAZO brand and Tazo, and by virtue of such ownership, manufactures, advertises, markets, and sells Products and other beverages to tens of thousands of consumers nationwide, including in New York.

## FACTUAL ALLEGATIONS

20. New York General Business Law § 349 (a) (b) states:

(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful. (b) Whenever the attorney general shall believe from evidence satisfactory to him that any person, firm, corporation or association or agent or employee thereof has engaged in or is about to engage in any of the acts or practices stated to be unlawful he may bring an action in the name and on behalf of the people of the state of New York to enjoin such unlawful acts or practices and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts or practices. In such action preliminary relief may be granted under article sixty-three of the civil practice law and rules.

21. Defendants manufacture and distribute tea as a bottled beverage under the brand TAZO.

22. Defendants sell their Products throughout the United States.

23. One of those Products is the "TAZO ORGANIC iced green tea."

24. The front of the label on the Product describes it as being "Green tea infused with lemongrass, spearmint & a **touch of sweetness**" See Exhibit A (emphasis added).

25. The Product is often sold, either online or through vending machines, in a way

where the nutrition facts are not available for review at the time of purchase.

26. In early 2025, Plaintiff purchased a bottle of Tazo Organic iced green tea.

27. A picture of the Product and packaging is shown in Exhibit A.

28. Plaintiff purchased it *because* the description stated, "touch of sweetness," with the amount of sugar playing a material role in Plaintiff's decision making as to which beverage to purchase.

29. High sugar intake has been linked to a variety of adverse health outcomes including but not limited to weight gain and obesity, increased risk of Type 2 diabetes, insulin resistance, cardiovascular disease, hypertension, fatty liver disease, tooth decay, metabolic syndrome, gout, inflammation, and other health conditions.

30. Upon consuming the beverage, Plaintiff noticed that the Product was surprisingly sweet, much more so than what he expected from a beverage being advertised as having a "touch of sweetness."

31. Upon further inspection, Plaintiff learned that the Product contained **30 grams of sugar**. (See Exhibit A).

32. For purposes of comparison, a 12 fl. oz can of Coca-Cola contains roughly a similar amount at 39 grams of sugar.

33. Plaintiff purchased the Product believing its composition to be similar to its past iterations of the same but with significantly less sugar due to the "touch of sweetness" indication. (See Exhibit B).

34. Under the Federal Food Drug and Cosmetic Act (herein "FDCA"), the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but still

misleading. If any single representation in the labeling is misleading, the entire food is misbranded. No other statement in the labeling cures a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled.

35. Defendants' packaging and advertising of the Products violate various state laws against misbranding. New York State law broadly prohibits the misbranding of food in language identical to that found in regulations promulgated pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.:*

> Pursuant to N.Y. AGM. LAW § 201, "[f]ood shall be deemed to be misbranded: 1. If its labeling is false or misleading in any particular," 4. "If its container is so made, formed, colored or filled as to be misleading," and 6. "If any word, statement or other information required by or under authority of this article to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use."

36. Defendants' Products are misbranded under New York law because they misled Plaintiff and Class members about the amount of sugar in the Products. The copy of "touch of sweetness" in their packaging and their e-commerce listings gives the false impression that the consumer is buying a Product with minimal sugar, when the actual serving amount contains well in excess of what is healthy for one serving, fundamentally no different than from drinking a can of soda.

37. The types of misrepresentations made above would be considered by a reasonable consumer when deciding to purchase the Products. A reasonable person would attach importance to whether Defendants' Products are "misbranded," *i.e.,* containing an amount of sugar in excess

of what is healthy for one serving.

38. Plaintiff did not know and had no reason to know that the Products contained an excessive amount of sugar, or the actual sugar content of Product, as he could not verify the nutrition facts until after purchasing the Product as he was purchasing it from a vending machine.

39. Defendants' Product packaging was a material factor in Plaintiffs and Class members' decisions to purchase the Products. Had Plaintiff known Defendants' Products contained a high amount of sugar, he would not have bought the Products.

40. Defendants' Product packaging as alleged herein is deceptive and misleading and was designed to increase sales of the Products. Defendants' misrepresentations are part of their systematic Product packaging practice.

41. The phrase "touch of sweetness" is a phrase that is used to indicate that while a product contains *some* sugar, the amount of sugar would be low.

42. Defendants' use of the phrase is especially misleading because Defendants have used the phrase on their other products where the amount of sugar is in fact substantially lower, further adding to the likelihood of consumer confusion.

43. Defendants, for example, sell an "Organic Iced Black Tea" also advertised as having a "touch of sweetness" which also contains only 15 grams of sugar, again half the sugar content of their Organized Iced Green Tea.

44. Defendants sell a "Skinny Chai Latte" also advertised as having a "touch of sweetness" which also contains only 14 grams of sugar per serving.

45. Defendants also sell a "Iced Passion Herbal Tea" also advertised as having a "touch of sweetness" which contains only 8 grams of sugar per serving.

46. That Defendants' other products advertised as having a "touch of sugar" contain

less than *half* (and in one case almost a *quarter*) of the sugar content of Defendants' Iced Organic Green Tea is indicative that Defendants knew the meaning of the phrase "touch of sweetness," knew how potential customers would react to reading it, that it would in fact attract customers who would gravitate towards more health conscious choices.

47. For this reason, Defendants' use of "touch of sweetness" on the Iced Organic Green Tea was not only misleading but willfully so.

48. The phrase "touch of sweetness" is a common in the beverage industry and is always used to denote an industry standard of *at most* 15 grams of sugar per serving.

49. In addition to the use of phrase by Defendants, the phrase is also commonly used by Defendants' competitors.

50. For example, for one of Defendants' competitors, the brand Numi, has 14 grams of sugar per bottle in their Aged Early Grey tea. Numi's Class Mint tea also has only 14 grams of sugar. Both are also advertised as having a "touch of sweetness."

51. Another competitor, PepsiCo, sells a Lemon Lemon drink also advertised as having a "touch of sweetness" and also contains only 15 grams of sugar per serving.

52. There is also the popular brand Culture Pop Soda which also advertises a line of different probiotic sodas with a "touch of sweetness." Their sodas contain only 8 grams of sugar per serving.

53. These are but a few of many products which employ the phrase "touch of sweetness" or the equivalent, all of which denote sugar content about *half* of what was in Defendants' Organic Iced Green Tea.

54. At the point of sale, Plaintiff and Class members did not know and had no reason to know that the Products were misbranded as set forth herein and would not have bought the

Products had they known the truth about them.

55. Defendants' packaging is misleading and in violation of FDA and consumer protection laws of each of the fifty states and the District of Columbia, and the Products at issue are misbranded as a matter of law. Misbranded products cannot be legally manufactured, advertised, distributed, held, or sold in the United States. Plaintiff and Class members would not have bought the Products had they known they were misbranded and illegal to sell or possess.

56. As a result of Defendants' misrepresentations, Plaintiff and thousands of others throughout the United States purchased the Products.

57. Plaintiff and the Class (defined below) have been damaged by Defendants' deceptive and unfair conduct in that they purchased the Products and paid prices they otherwise would not have paid had Defendants not misrepresented the Products' actual sugar content, or misleading ingredient label.

## CLASS ACTION ALLEGATIONS

58. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of Tazo bottled tea Products from vending machines during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

59. The members of the Class are so numerous that joining all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Other members of the Class may be

identified from records maintained by Defendants and may be notified of the pendency of this action by mail or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

60. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct.

61. Plaintiff will fairly and adequately protect the interests of the members of the Class in that he has no interests antagonistic to those of the other members of the Class. Plaintiff has retained experienced and competent counsel.

62. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were not available, Defendants would likely unfairly receive thousands of dollars or more in improper charges.

63. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the common questions of law fact to the Class are:

   a. Whether Defendants labeled, packaged, marketed, advertised, and/or sold the Products to Plaintiff and those similarly situated, using false, misleading, and/or deceptive packaging and labeling;

   b. Whether Defendants' action constitutes violations of 16 C.F.R. 100, *et. seq.;*

   c. Whether Defendants' actions constitute violations of the New York General Business Law § 349;

    d. Whether Defendants' actions constitute violations of the New York General Business Law § 350;

    e. Whether Defendants omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising, and/or sale of the Products;

    f. Whether Defendants' labeling, packaging, marketing, advertising, and/or selling the Products constituted an unfair, unlawful, or fraudulent practice;

    g. Whether Defendants improperly mischaracterized the sugar content of the Products by their deceptive language on the Products' packaging;

    h. Whether and to what extent injunctive relief should be imposed on Defendants to prevent such conduct in the future;

    i. Whether the members of the Class have sustained damages as a result of Defendants' wrongful conduct;

    j. The appropriate measure of damages and/or other relief;

    k. Whether Defendants have been unjustly enriched by their scheme of using false, misleading, and/or deceptive labeling, packaging, or misrepresentations, and;

    l. Whether Defendants should be enjoined from continuing their unlawful practices.

64. The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a Class action.

65. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate

action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

66. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

67. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

68. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

69. Defendants' conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349

**(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

70. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71. Plaintiff brings this claim individually and on behalf of the other members of the Class for violations of NY GBL § 349.

72. By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by misbranding their Products as seeming to contain less sugar than is actually included.

73. The practices employed by Defendants, whereby Defendants advertised, promoted, marketed, and sold their Products in packages implying lower sugar content than is accurate, are unfair, deceptive, and misleading and are in violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.,* in that said Products are misbranded.

74. The practices employed by Defendants, whereby Defendants advertised, promoted, marketed, and sold their Products in packages implying lower sugar content than is accurate are unfair, deceptive, and misleading and are in violation of the NY GBL § 349 in that said Products are misbranded.

75. The foregoing deceptive acts and practices were directed at consumers.

76. Plaintiff and the other Class members suffered a loss as a result of Defendants' deceptive and unfair trade acts.

77. Specifically, as a result of Defendants' deceptive and unfair acts and practices, Plaintiff and the other Class members suffered monetary losses associated with the purchase of the Products that they would not have otherwise purchased had they known the true sugar content of the Products.

78. Therefore, Plaintiff and the other class members are entitled to damages in the statutory amount of $50 per violation plus costs and attorney's fees.

## COUNT II

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
## (UNLAWFUL FALSE ADVERTISING ACT)

79. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

80. Plaintiff brings this claim individually and on behalf of the other members of the Class for violations of NY GBL § 350.

81. As fully alleged above, by advertising, marketing, distributing, labeling, and selling the Products to Plaintiff and other members of the Class, Defendants engaged in and continue to engage in false advertising.

82. Defendants engaged in false advertising by advertising, marketing, distributing, and selling the Products with packaging that indicated "a touch of sweetness" despite containing an excessive amount of sugar. (See Exhibit A).

83. The foregoing false advertising acts were directed at consumers.

84. Plaintiff and other members of the Class suffered a loss as a result of Defendants' false advertising. Specifically, as a result of Defendants' deceptive and unfair acts and practices, Plaintiff and the other Class members suffered monetary losses associated with the purchase of the Products. Plaintiffs would not have otherwise purchased had they known the true sugar content of the Products.

85. In this regard, Defendants have violated and continue to violate GBL § 350, which makes false advertising unlawful. As a direct and proximate result of Defendants' violation of GBL § 350 above, Plaintiff and other members of the Class have suffered damages in an amount

to be determined at trial but of not less than the statutory minimum of $500 per violation.

## COUNT III

### NEGLIGENT MISREPRESENTATION
### (All States and the District of Columbia)

86. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

87. Defendants, directly or through their agents and employees, made false representations, concealment, and nondisclosures to Plaintiff and members of the Class.

88. .

89. Plaintiff and members of the Class reasonably relied on Defendants' representation that their Products contain a lower sugar content than the Products actually contain.

90. In making the representations of fact to Plaintiff and members of the Class described herein, Defendants have failed to fulfill its duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendants' negligence and carelessness.

91. Defendants, in making the misrepresentations and omissions and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiff and members of the Class.

92. Plaintiff and members of the Class relied upon these false representations when purchasing the Products from vending machines, which reliance was justified and reasonably foreseeable.

93. As a result of Defendants' wrongful conduct, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages,

including but not limited to the amounts paid for the Products and any interest that would have been accrued on all those monies, all in an amount to be determined according to proof at time of trial.

## COUNT IV

### COMMON LAW FRAUD
### (All States and the District of Columbia)

94. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

95. Defendants intentionally made materially false and misleading representations regarding the sugar content of the Products.

96. Plaintiff and the Class were induced by and relied on Defendants' false and misleading packaging, representations, and omissions, and did not know at the time of purchase that the Product contained a sugar content higher than what is considered healthy, as no extra amount of added sugar is deemed beneficial to health.

97. Defendants knew or should have known of its false and misleading labeling, packaging and misrepresentations and omissions. Defendants nevertheless continued to promote and encourage customers to purchase the Product in a misleading and deceptive manner.

98. Plaintiff and the Class have been injured as a result of Defendants' fraudulent conduct.

99. Defendants are liable to Plaintiff and the Class for damages sustained as a result of Defendants' fraud, in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(A)  For an Order certifying the nationwide Class and under Rule 23 of the Federal Rules

of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent members of the Class;

(B) For an Order declaring Defendants' conduct violates the statutes referenced herein;

(C) For an order finding in favor of Plaintiff and the Class;

(D) For statutory, compensatory and/or punitive damages in amounts to be determined by the Court and/or jury;

(E) For prejudgment interest on all amounts awarded;

(F) For an Order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(G) For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: New York, New York
September 2, 2025

Respectfully submitted,

**DGW KRAMER LLP**

*/s/ Jacob Chen*
Jacob Chen, Esq.
jchen@dgwllp.com
Richard M. Hendler, Esq.
hendler@hendlerlawfirm.com
45 Rockefeller Plaza, 20th Floor,
New York, NY 10111
*Attorneys for the Plaintiff*